John T. Casey, J.
In this action for an injunction, the plaintiff, a taxpayers’ corporation, seeks preliminarily to restrain the Governor from retaining certain officeholders, and the Comptroller from paying their salaries, on the ground that their positions have been effectively abolished by the legislative enactment of appropriation bill S 7281-A 9251,[1] in a reduced lump sum form, after legislative fiscal committees had recommended that these positions and certain programs be abolished.
Prior to such enactment these committees reviewed the requests of different executive departments and in some instances conducted hearings and made certain amendments to the budget bill. To the extent that the bill itself specifically eliminated certain positions and programs there is no dispute. Those positions and programs were effectively eliminated by appropriate legislative action and it is agreed that no expenditures can be made for any such position or program.
The problem arises as to the positions and programs which were specifically deleted by the committees’ recommendation in their report, but were not specifically deleted by item in the bill itself, in the form in which it passed the Legislature, and the only indication of any intention to delete must be inferred from the fact that the appropriations were passed by the Legislature in reduced lump sum amounts.
The plaintiff argues that these positions and programs have thereby been effectively eliminated and those persons who hold under them are doing so illegally and should be removed by appropriate executive authority. This argument proceeds on the theory that the passage of the appropriation bill by the Legislature in reduced lump sum amounts confirmed, ratified and adopted the deletive action of their committees’ report; and to continue the existence of such programs and positions constitutes a usurpation of legislative power by the executive branch of government in defiance of the separation of powers provisions of sections 1 and 7 of article III of the New York State Constitution.
The defendants contend that no such infringement of power occurred, and the executive branch and not the legislative *331 committees has the right to dictate which of the unspecified positions and programs will continue within, of course, the parameter of the total amount of the appropriation made, and since the Legislature itself did not specifically delete the subject positions and programs, the executive departments may within their discretion retain them and administer the moneys appropriated in harmony with the Constitutional provisions dealing with separation of powers of the State government.
Procedurally, the plaintiff, as one seeking such drastic relief as an injunction, must make a strong showing of clear entitlement. This requirement fails if it be considered that, as taxpayers, all the members of the plaintiff corporation will not be paying any more or less taxes than the amount appropriated regardless of which of the persons or programs are retained and which are abolished, and to that extent the plaintiff as a corporation has no cause to complain and fails to demonstrate how it or its individual members could be detrimentally affected by whatever result is reached herein.
In this day and age, however, with a strong emphasis placed on citizen interest and involvement in governmental matters and the expanding concept of standing, (see Boryszewski v Brydges, 37 NY2d 361) which is being afforded citizens to challenge governmental decisions and policies, a consideration of the merits of the controversy is required.
The extent that the Legislature may alter an executive budget appropriations bill is contained in section 4 of article VII. Appropriation bills differ from other bills in that the Legislature may not alter an appropriation bill submitted by the Governor except to strike out or to reduce items therein but it may add thereto, provided that such additions are stated separately and distinctly from the original items of the bill and refer each to a single item or purpose. Such an appropriation bill shall, when passed by both houses, become law immediately without further action by the Governor.
The first of the constitutional provisions cited above has been judicially interpreted to mean that the laws of this State must be made by the lawmaking bodies of the State and not by administrative officers acting solely on their own ideas of sound public policy, no matter how excellent such ideas might be. (New York Good Humor v Morgan, 171 Misc 899.) In other words, legislative power cannot be delegated by the Legislature, only the administrative power to carry out the legisla *332 tion that has been enacted, may be delegated. (Ross v Arbury, 206 Misc 74, affd 285 App Div 886.) The form of the appropriation is especially significant, for as was said in Starling Realty Corp. v State of New York (174 Misc 375, 381, affd 261 App Div 363, affd 286 NY 272): "lump sum appropriation leaves the allocation of the sum appropriated to the Board or body for whom the appropriation is made, while in the itemized line appropriation, the allocation or segregation is made by the Legislature.” From these principles it follows that the constitutional function of legislating which belongs exclusively to the Legislature cannot be delegated even to its own committees or committee chairmen. If, therefore, the deletions of the questioned positions and programs can be considered the act of the Legislature itself, the plaintiff succeeds, but if such can be considered only the act of the fiscal committees of the Legislature, the plaintiff’s action fails.
In the exercise of due judicial caution, the intent of a few committee members should not be considered the act of the entire legislative branch of government unless the contrary clearly appears. Having specifically abolished some positions and programs in the bill itself it can reasonably be concluded that those not so specifically itemized were not designated or intended for deletion. Moreover, by providing in section 49 of the State Finance Law that lump sum appropriations for State operating purposes shall not be available for payment of such services without the approval of the Director of the Budget and a certificate of such approval filed with the chairmen of the appropriate legislative committees and State Comptroller, an intention may be gleaned that the Legislature itself considers the positions and programs within a department to implement and carry out the appropriation made, as an administrative rather than a legislative act. If it be so considered then it cannot be said that the Legislature intended to abolish the State services not specifically enumerated by itself as separate, distinct and contrary to the recommendation of its committees.
The second constitutional provision, section 7 of article III, prohibits the receipt by a member of the Legislature of a civil appointment by the Legislature. This provision was interpreted in People v Tremaine (252 NY 27). In that case the Legislature had transposed an itemized executive budget into lump sum appropriations for certain departments (as herein) and then attempted to condition those appropriations on *333 gubernatorial and legislative fiscal committee approval. This attempt was held unconstitutional. The court in Tremaine reasoned that once the appropriations had been made, the Legislature could not confer on its own fiscal committees the power to administer, control and segregate the appropriations and such attempt violated section 7 of article III of the State Constitution as an unlawful usurpation of executive power by the legislative branch of government. The court noted that (p 44): "The legislation is complete when the appropriation is made. The Legislature might make the segregation itself but it may not confer administrative powers upon its members without giving them, unconstitutionally, civil appointments to administrative offices.” In a concurring opinion in the Tremaine case the words of Judge Crane are especially instructive (pp 58-59): "That the Legislature is supreme in the matter of making appropriations and controlling the revenue is a fundamental of government. This control no one challenges. The question is whether, after having made an appropriation, having authorized an expenditure, the Legislature can follow it up and through a committee or a single member aid or control the manner in which the appropriation shall be disbursed * * * There is one thing, however, [the Legislature] cannot do * * * It cannot exercise the functions of the Executive. It cannot administer the money after it has been once appropriated.”
The only distinction that can be drawn between the instant situation and that of Tremaine is that here the Legislature made the lump sum appropriation after the committees’ report whereas in Tremaine the appropriation was made subject to subsequent legislative committee control. Whether before or after, however, in my opinion, the constitutional principle is the same. The Legislature itself must appropriate and dictate, if it desires, the services and positions designated for such appropriation or it may designate the executive departments to administer in their discretion the lump sum appropriations made. But a legislative committee may not do so on its own and may not be designated by the Legislature to do so, without running afoul of these separation of powers provisions of the State Constitution.
Because the appropriations bill was passed in lump sum form, and because the subject positions and programs were not specifically designated for deletion by the Legislature itself in the bill, it follows that the recommendation of the legisla *334 tive committees to delete these positions and programs was ineffectual to accomplish that purpose and the various executive departments have the power to implement and administer as they think best, the lump sum appropriations made and such executive action does not constitute an unlawful usurpation of legislative power by the executive branch of government.
The plaintiff’s motion for a temporary injunction is denied and for the reasons expressed herein its complaint is dismissed as being without legal merit.

. This bill is known as the State purposes budget and provides for the operating expenses of State agencies for the fiscal year 1976.