Cooke, J.
Petitioner, a tenant of an apartment subject to rent control in the north quadrant of the Parkchester complex, on behalf of himself and all others similarly situated, seeks by this proceeding to review and annul the Attorney-General’s acceptance on December 14, 1972 for filing, pursuant to section 352-e of the General Business Law, of the offering plan for the conversion of that portion of said residential aggregate to a condominium. The Attorney-General, before answer, moved for dismissal on various grounds.
In this north quadrant are 3,985 residential apartments, petitioner being a tenant of one-of 3,623 which are rent controlled. Since the sponsor of the plan elected not to utilize the machinery of section 55 of the Rent, Eviction and Rehabilitation Regulations of the New York City Housing and Development Administration, petitioner as such a tenant may not be evicted by the sponsor or a purchaser of his unit except, of course, for default under his lease or tenancy. However, according a condominium status to the quadrant reduces the number and importance of rental tenants, thus diluting their negotiating power as a group and in turn diminishing the strength and significance of each individual tenant, alters profusely the number of fee titleholders of the common interest in the common elements and results in the inevitable disruption that must of necessity follow such an extensive change of operation. Consonant with liberalized *78 attitudes towards standing (see Matter of Douglaston Civic Assn. v. Galvin, 36 N Y 2d 1; National Organization for Women v. State Div. of Human Rights, 34 N Y 2d 416), petitioner’s interest in the reorganization of the complex in which he resides, therefore, is not abstract 'but personal, real, direct and substantial, conferring standing to challenge the public official’s action (Matter of Taylor v. Sise, 33 N Y 2d 357, 362; Schieffelin v. Komfort, 212 N. Y. 520, 530; Butler v. Kent, 19 Johns. 223, 226).
Arriving at the merits, we find that all units of a property submitted to the provisions of article 9-B of the Real Property Law, the Condominium Act, are deemed co-operative interests in real property within the meaning of section 352-e of the General Business Law (Real Property Law, § 339-ee). The filing requirement set forth in said section is simply for the purpose of affording “ potential investors, purchasers and participants an adequate basis upon which to found their judgment and shall not omit any material fact or contain any untrue statement of a material fact ” (General Business Law, § 352-e, subd. 1, par. [b]; see 13 NYCRR 19.2) and nothing in article 23-A of the General Business Law requires, upon the filing of a plan, that the Attorney-General be obliged to launch a detailed investigation as to the truthfulness of all the representations made in the statement, said instrument being filed simply for informational purposes (Matter of Greenthal & Co. v. Lefkowitz, 32 NY 2d 457, 462; Richards v. Kaskel, 32 N Y 2d 524, 535, n. 5). Indeed, the statute itself (subd. 4) requires that all sales literature contain a disclaimer that the filing of the requisite offering statement does not constitute approval of the issue or sale by the Department of Law or the Attorney-General.
Nor does subdivision 2 of section 352-e, which mandates that the Attorney-General, within a prescribed time after filing, issue a letter stating that the offering has been filed or, in the alternative, “ a notification in writing indicating deficiencies in the offering statement, statements or prospectus ”, impose upon said official a - responsibility for the truth and accuracy of the sponsor’s plan. The word ‘ ‘ deficiencies ’ ’ in this context refers to information required in paragraph (b) of subdivision 1 which is lacking (see Meyer v. Peck, 28 N. Y. 590, 596-597; Matter of Taxpayers of Plattsburgh, 27 App. Div. 353, 360; Black’s Law *79 Dictionary [rev. 4th ed.], p. 510; Bouvier’s Law Dictionary [1940], p. 284), rather than to items that are false or inaccurate.
■ With the Attorney-General’s duty thus circumscribed, there was no need, contrary to Special Term’s conclusion, for a hearing concerning the existence of misrepresentation of probable increased tax assessments, the truth of an engineer’s report regarding the property’s condition and the accuracy of statements regarding necessary repairs and the amounts condominium owners would have to expend for building operation.
In concluding that the Attorney-General’s duty is thus circumscribed, it is not meant, to suggest that his powers are as limited as the duty imposed on him; they may be somewhat broader in that he may in his discretion pursue an inquiry into the application submitted to him (Matter of Greenthal & Co. v. Lefkowitz, supra, p. 462; but see Matter, of Parkchester Apts. v. Lefkowitz, 36 N Y 2d 688).
Although not pivotal for disposition, the instant proceeding • does present a question of common interest affecting the rights of every nonpurchasing tenant in the quadrant and we see no obstacle to class action treatment (CPLR 1005, subd. [a] ; Tuvim v. 10 E. 30 Corp., 32 N Y 2d 541, 545; Richards v. Kashel, 32 N Y 2d 524, supra; 2 Weinstein-Korn-Miller, par. 1005.11, pp. 10-75-10-76).
The order appealed from should be affirmed, without costs..
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.